# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6235 | **DATE** | 1/3/2005 |
| **CASE TITLE** | All Ems, Inc. vs. 7-Eleven, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, the Franchise Agreement between All Ems and the Wagdys and 7-Eleven is hereby terminated due to breaches of the Franchise Agreement by both parties. The Court finds that 7-Eleven is entitled to monetary damages in the amount of $2,731.54 and that each party is to bear its own attorney's fees. 7-Eleven is hereby awarded possession of the store, and ALL EMS and the Wagdys are ordered to vacate the premises on or before 1/31/05. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | JAN 4 2005 | | |
| | Notified counsel by telephone. | | date docketed | | 3/1 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | JAN 4 '05 | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | date mailed notice | | |
| OR | courtroom deputy's initials | 2008 JAN -3 PM 4:31 | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALL EMS, INC., an Illinois corporation, MAGDY WAGDY and SUSAN WAGDY, | ) ) ) ) |
| Plaintiffs, | ) No. 96 C 6235 ) |
| v. | ) Wayne R. Andersen ) District Judge |
| 7-ELEVEN, INC., a foreign corporation, d/b/a 7-Eleven FOOD STORES, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM, OPINION AND ORDER

Plaintiffs/Counter-Defendants ALL EMS, Inc. and Magdy and Susan Wagdy are franchisees of a 7-Eleven store located in Chicago, Illinois. Plaintiffs have sued Defendant/Counter-Plaintiff 7-Eleven Corporation for breach of the Franchise Agreement. 7-Eleven has filed a third amended counterclaim alleging that Plaintiffs have breached the Franchise Agreement and seeking possession of the store. A jury trial in June 2000 resulted in a hung jury. This case was retried as a bench trial before the Court.

After considering all of the evidence, we hereby award possession of the store to the Defendant/Counter-Plaintiff 7-Eleven. We find that 7-Eleven is entitled to monetary damages in the amount of $ 2,731.54 and that each party is to bear its own attorney's fees. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

*311*

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. Evidence Presented At Trial

This is a dispute between 7-Eleven and one of its franchisees in which each asserts that the other did not comply with the Store Franchise Agreement (the "Agreement"). 7-Eleven seeks to terminate the franchise because it claims that ALL EMS has failed to maintain the minimum Net Worth required of all franchisees. 7-Eleven seeks to regain possession of the convenience store, to recover the draws taken by the Wagdys since their franchise was terminated in February, 2000, and to recover the amount shown by the evidence to be in deficit. 7-Eleven seeks the monetary damages from ALL EMS and the Wagdys, who personally guaranteed the corporation's debts, attorneys fees and costs.

ALL EMS and the Wagdys claim that 7-Eleven has tried to wrongfully terminate their franchise by purposefully engaging in conduct to decrease their profits and ultimately diminish their net worth. ALL EMS and the Wagdys seek monetary damages they claim resulted from 7-Eleven's wrongful conduct.

The evidence presented showed that on April 14, 1987, 7-Eleven executed a Store Franchise Agreement (the "Agreement") with the Wagdys. Under the Agreement, 7-Eleven franchised the 7-Eleven Store located at 5355 West Diversey Avenue, Chicago, Illinois (the "Store") to the Wagdys. The Agreement sets out the duties and obligations between the parties. Beginning in April, 1987, the Wagdys assigned their rights and obligations under the Agreement to their corporation, ALL EMS. At the time ALL EMS assumed the rights and obligations under the Agreement, the Wagdys executed a Guaranty under which the Wagdys personally guaranteed the "full and prompt performance of all obligations, of every nature and kind, of [ALL EMS]

2

under the Agreement." In July 2000, while this lawsuit was pending, the Agreement was extended for another five years.

Under the terms of the Agreement, 7-Eleven provided to ALL EMS and the Wagdys a lease of the store, use of 7-Eleven's license and trademark, on-going financing for the franchisee (inventory purchases, payroll, draw, all operating expenses, etc.), on-going accounting and payroll services, and other services. Paragraph 11 of the Agreement states that "[i]f in 7-Eleven's sole opinion, there has been a Material Breach by FRANCHISEE or 7-ELEVEN believes its Security Interest is threatened, 7-Eleven may discontinue the financing, described above, and the unpaid balance in the Open Account shall be immediately due and payable."

In paragraph 28 of the Agreement, ALL EMS and the Wagdys warranted that the occurrence of certain events, defined as Material Breaches, was good cause to terminate the Agreement and, consequently, their franchise. Among the events considered to be a Material Breach and good cause for termination is the failure to maintain the minimum Net Worth required by the Agreement. Specifically, the Agreement states:

> "Material Breach" means any one or more of the following events entitling 7-Eleven to terminate the Agreement as set out in Paragraph 28: (i) Net Worth is less than the minimum determined pursuant to Paragraph 13 of the Agreement.

Paragraph 13 of the Agreement sets out the minimum Net Worth. In 1987, when the Wagdys signed the Agreement, there was an escalating scale for the Net Worth. In 1988, the Agreement was amended to provide for a flat $ 10,000 requirement of minimum Net Worth. That is, ALL EMS and the Wagdys had to maintain at least $ 10,000 in Net Worth.

The Agreement also provided that ALL EMS and the Wagdys had the right to cure

Material Breaches, including the failure to maintain the minimum Net Worth, provided that ALL EMS and the Wagdys had not already committed two Material Breaches within the previous three years. In other words, three Material Breaches within three years meant that 7-Eleven could terminate the Agreement without allowing ALL EMS and the Wagdys the opportunity to cure their last Material Breach.

Finally, Paragraph 6 of the Agreement provides:

Lease. 7-ELEVEN leases the Store and Equipment to FRANCHISEE for use only in connection with operation of the Store pursuant to this Agreement . . .
With respect to the Lease, it is the intention of the parties to create only a landlord-tenant relationship. In the event of a breach of this Agreement by the FRANCHISEE, 7-ELEVEN shall be entitled, in addition to any other rights under this Agreement: to invoke all rights and remedies, judicial and otherwise, available to a landlord, including summary proceedings for possession of leased property, the right to appointment of a receiver or similar remedies; and/or (ii) to terminate, cancel, or declare a forfeiture of the Lease.

At trial, 7-Eleven presented evidence to establish that ALL EMS and the Wagdy's Net Worth had fallen below the $ 10,000 mark required in the Agreement. At the end of 2000, ALL EMS and the Wagdy's deficit was $ 11,286. In September 2001, their deficit had increased to $ 31,570; in November, 2001, the deficit had grown to $40,824. At the time of trial, the deficit had grown to $ 86, 841.00.

On April 25, 2002, 7-Eleven filed its Second Amended Counterclaim. This pleading set out the grounds for 7-Eleven's termination of ALL EMS and the Wagdys' franchise. The Second Amended Counterclaim alleges that the Notices of Breach and/or Termination informed ALL EMS and the Wagdys that they had breached the Agreement for failing to maintain the Minimum Net Worth required by the Agreement. The Notices gave ALL EMS and the Wagdys the right to cure these Material Breaches, but ALL EMS and the Wagdys failed to do so.

4

The first notice pertaining to Net Worth that was served on ALL EMS and the Wagdys was on January 24, 2000. This was later supplemented by a January 31, 2000 notice. The January 24, 2000 notice noted that there was a negative $ 23,859 position in their Net Worth. However, because there was a dispute about $ 9,000, 7-Eleven gave ALL EMS and the Wagdys credit for this amount, leaving a negative deficit of approximately $ 14,000. The January 31, 2000 notice made a correction and told ALL EMS and the Wagdys that they needed to pay $ 24,000 to correct the net worth position. The notice indicated that ALL EMS and the Wagdys had three days in which to pay the money.

On January 27, 2000, ALL EMS and the Wagdys made a $ 14,210 payment. This brought their Net Worth position up to $ 5,811. On February 3, 2000, they made a second payment of $ 301.28, bringing their Net Worth position to $ 6,012.88. The Agreement provides that there is a time period of 72 hours within which to cure a breach. Thus, ALL EMS and the Wagdys had until February 4, 2000 to bring their Net Worth position up to $ 10,000.

ALL EMS and the Wagdys did not make any other payments until February 21, 2000. At that time, they made a $ 2,730 payment which brought their balance to $ 8,842.

The next notice that 7-Eleven served on ALL EMS and the Wagdys was the December 3, 2001 Notice of Breach and/or Termination. This Notice informed ALL EMS and the Wagdys that they had a negative Net Worth of $ 37,154.79. The Notice informed them that to cure the breach, they had to increase their minimum Net Worth by $ 37,505.87. This figure included a credit for the $ 9,648.92 that was deducted from their Net Worth as a result of their misreporting of retail prices, which 7-Eleven acknowledged in the Notice was still disputed by ALL EMS and the Wagdys. ALL EMS and the Wagdys failed to cure the deficit in their Net Worth and failed

to surrender possession of the store.

The March 13, 2002 Notice informed ALL EMS and the Wagdys that they had a negative $ 55,422.79 Net Worth. The March 13, 2002 Notice allowed ALL EMS and the Wagdys the opportunity to cure, but they have failed to do so.

ALL EMS and the Wagdys do not deny that their Net Worth has plummeted to the depths shown on the financial summaries, but they assert that their reduction in Net Worth was caused by 7-Eleven's misconduct. ALL EMS and the Wagdys argue that 7-Eleven deprived them of revenue which would have allowed them to cure the breaches and caused product losses which affected their gross profit.

ALL EMS and the Wagdys argue that 7-Eleven's lack of performance came in the form of: 1) failing to replace freezers in the store which caused a loss of frozen goods and sales; 2) failing to replace the machine that dispenses phone cards; 3) failing to give ALL EMS and the Wagdys information on cigarette sales incentives which would have increased their profits; 4) charging ALL EMS and the Wagdys' equity account maintenance charges for maintenance that was not done; and 5) generally failing to support ALL EMS and the Wagdy's efforts to maximize profits. Therefore, ALL EMS and the Wagdys claim that this conduct by 7-Eleven caused their Net Worth to fall below the required minimum balance of $ 10,000. ALL EMS and the Wagdys seek monetary damages in the form of their share of the profit lost as a result of 7-Eleven's alleged misconduct.

It is undisputed that ALL EMS and the Wagdy's Net Worth did fall below the $ 10,000 mark, the minimum amount required by the Agreement. This fact alone is enough to prove that ALL EMS and the Wagdys breached the Agreement and award 7-Eleven relief. *See Original*

6

*Great American Chocolate Chip Cookie Company v. River Valley Cookies*, 970 F.2d 273, 279 (7th Cir. 1992). Because their Net Worth is below the contractually required level, the consequence is that ALL EMS and the Wagdys have surrendered their rights to the franchise. However, we will proceed to analyze whether the reduction in Net Worth is justified due to 7-Eleven's misconduct.

### A. Frozen Food Sales

ALL EMS and the Wagdys claim that 7-Eleven did not provide the proper equipment in working order, namely freezers, to allow them to maximize their ice cream and frozen food sales. The evidence showed that 7-Eleven did agree to maintain the freezers but failed to replace them or keep them in working order in this case. Thus, we find that 7-Eleven was required to replace the freezer, but did not.

We find that as a result of 7-Eleven's failure to replace or maintain the freezers, ALL EMS and the Wagdys lost sales and inventory in the amount of $ 37,091.25 (which includes $ 587.25 for improper charges for repairs to freezers). Therefore, we reduce the deficit by $ 37,091.25.

### B. Cigarette Promotion

With regard to the cigarette promotion, ALL EMS and the Wagdys claim that they were ineligible for this promotion because 7-Eleven failed to provide the proper shelving necessary for the display. Mr. Wagdy testified that 7-Eleven did not provide the proper shelving in order for him to participate in the cigarette rebate program.

The evidence showed that Mr. Wagdy knew about the cigarette promotions. Mr. Wagdy was a very able store operator who kept abreast of promotions and rebates due him. He

complained in many other instances when he did not receive proper credit for rebates and promotions and we have every reason to believe that Mr. Wagdy would have contemporaneously complained had he not received proper credit for participation in the cigarette rebate program.

Mr. Schmitt, a field representative for 7-Eleven, credibly testified that there was proper shelving in the store necessary to participate in the cigarette rebates. Thus, the evidence showed that the proper shelving was present for the cigarette representatives to put ALL EMS and the Wagdys in line to receive the rebates. Mr. Schmitt and Mr. Stetzinger both testified that Mr. Wagdy made the decision not to participate in the cigarette rebate program. The evidence showed that Mr. Wagdy did not want to maintain the placement of the cigarette products in the way that the cigarette companies wanted him to because it was too time consuming. Moreover, the evidence revealed that ALL EMS and the Wagdys did not receive the cigarette rebates because they refused to pass along potential savings to their customers, as the rebate program required.

In sum, we find that there is no evidence that 7-Eleven was responsible for the failure of ALL EMS and the Wagdys to receive rebates as part of the cigarette rebate program.

### C. 7-Eleven's Consultation Support

Finally, we find that 7-Eleven did not render the consultation and advice required by the Agreement. Under the Agreement, 7-Eleven was required to provide a field consultant who would provide advice to franchisees. However, the evidence revealed that 7-Eleven made an exception when ALL EMS and the Wagdys were concerned and did not provide them with the field advice required by the Agreement. ALL EMS and the Wagdys had no field consultant who

came to the store regularly to assist them in pricing and stocking items.

The evidence presented at trial revealed that ALL EMS and the Wagdys were damaged in the amount of $ 15,600 by 7-Eleven's failure to provide proper consultation and advice. Therefore, we reduce the deficit by $ 15,600.

## II. Resolution Of The Pleadings Currently Before The Court

In the preceding section, we analyzed the evidence presented at trial and concluded that both parties to the Franchise Agreement have violated the Agreement. As detailed above, we find that 7-Eleven is entitled to possession of the store and $ 2,731.54 in damages and each party is to bear its own costs and attorneys fees.

The parties in this case have filed numerous pleadings and amended pleadings in this long and drawn out litigation. In an effort to elucidate the current pleadings now before the Court, we will analyze each count of the Fourth Amended Complaint and Second Amended Counterclaim in an effort to resolve with finality all issues pending before the Court.

### A. ALL EMS And The Wagdys' Fourth Amended Complaint

Based upon the foregoing, we find the following as to ALL EMS and the Wagdys' Fourth Amended Complaint:

#### 1. Count I–Breach of Covenant of Good Faith and Fair Dealing

We find in favor of 7-Eleven on this Count for the reasons stated in our previous order of February 11, 1997. Therefore, judgment is entered in favor of 7-Eleven and against ALL EMS and the Wagdys on Count I.

#### 2. Count II–Violation of Illinois Franchise Disclosure Act

In this Count, ALL EMS and the Wagdys request that the Court enjoin 7-Eleven from

9

terminating the franchise due to 7-Eleven's violation of the Franchise Agreement. We find in

favor of 7-Eleven and against ALL EMS and the Wagdys on this Count. We deny the relief

requested in this Count because the Court finds that ALL EMS and the Wagdys have violated the

Franchise Agreement.

### 3. Count III–Breach of Contract

In this Count, ALL EMS and the Wagdys repeat the allegations of Count II and also

allege that 7-Eleven did not properly credit ALL EMS and the Wagdys $ 11,013.52. We deny

the relief requested in Count III for the same reasons that we denied the relief requested in Count

II. We note that subsequent to the filing of the Fourth Amended Complaint, 7-Eleven agreed to,

and did, credit ALL EMS and the Wagdys with $ 11,013.52.

### 4. Counts IV and V–Fraud

In Counts IV and V, ALL EMS and the Wagdys allege that 7-Eleven committed fraud.

We find that there is no evidence that 7-Eleven defrauded ALL EMS and the Wagdys, nor is

there any evidence of detrimental reliance on the part of ALL EMS and the Wagdys. Therefore,

we find in favor of 7-Eleven on Counts IV and V.

### 5. Counts VI and VII–Spoliation of Evidence

In these Counts, ALL EMS and the Wagdys claim that 7-Eleven intentionally (Count VI)

and negligently (Count VII) destroyed evidence. We deny the relief requested by ALL EMS and

the Wagdys in these Counts because we find that there is no credible evidence that 7-Eleven

deliberately or negligently destroyed any evidence. Moreover, because the breach claimed in the

March 13, 2002 Notice was unrelated to the allegedly spoiled evidence, there is no prejudice to

10

ALL EMS and the Wagdys even if 7-Eleven had wrongfully destroyed the evidence. Therefore, we find in favor of 7-Eleven and against ALL EMS and the Wagdys on Counts VI and VII.

B. 7-Eleven's Second Amended Counterclaim

We find as follows on 7-Eleven's Second Amended Counterclaim:

1. Counts I and III–Recovery of Possession of Real Estate

We find that 7-Eleven is entitled to possession of the store and that ALL EMS and the Wagdys must leave the premises on or before January 31, 2005.

2. Counts II and IV–Action for Recovery of Damages

The March 13, 2002 Notice of Breach informed ALL EMS and the Wagdys that they had a negative $ 55,422.79 Net Worth. We find that 7-Eleven has proved damages in this amount. However, ALL EMS and the Wagdys have persuaded this Court that from the $ 55,422.79 amount, $ 37,091.25 should be deducted for 7-Eleven's failure to maintain the freezers, and $ 15,600 should be deducted for 7-Eleven's failure to provide proper consultation and field support. Therefore, we order ALL EMS and the Wagdys to pay $ 2,731.54 as a result of their breach of the Franchise Agreement.

CONCLUSION

Based upon the foregoing findings of fact and conclusions of law:

1. The Franchise Agreement between ALL EMS and the Wagdys and 7-Eleven is hereby terminated due to breaches of the Franchise Agreement by both parties;

2. ALL EMS and the Wagdys are ordered to pay to 7-Eleven the amount of $ 2,731.54 as the balance due as of the March 13, 2002 Notice of Breach, less deductions taken for 7-Eleven's own breaches of the Franchise Agreement for its failure to repair the freezers and render proper

consultation as itemized above. We note that if damages occurred after March 13, 2002, they are new and separate causes of action which are not part of this lawsuit;

3. Both parties are ordered to pay their own attorneys fees and costs due to their own breach of the Franchise Agreement.

4. 7-Eleven is hereby awarded possession of the store, and ALL EMS and the Wagdys are ordered to vacate the premises on or before January 31, 2005.

It is so ordered. This is a final and appealable order. This case is hereby terminated.

_____
Wayne R. Andersen
United States District Judge

Dated: _____